LAW OFFICE OF STACY SCHEFF
PO Box 40611
Tucson, AZ 85717-0611
Phone: (520) 471-8333
Stacy.Scheff@gmail.com

By: Stacey Scheff #028364

WATERFALL, ECONOMIDIS, CALDWELL, HANSHAW & VILLAMANA, P.C.
Williams Center, Suite 800
5210 E. Williams Circle
Tucson, AZ  85711
(520) 790-5828
Counsel
Kasey C. Nye
SB #020610
knye@waterfallattorneys.com

Attorneys for Plaintiff, SUSAN O'SHEA

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>BRIAN HANKS<br><br>Debtor | Chapter 7<br><br>Case No. 4:18-bk-09801-SHG |
| SUSAN O'SHEA, an unmarried woman<br>Plaintiff,<br><br>vs.<br><br>BRIAN HANKS and unmarried man,<br>Defendant. | Adv. No.<br><br>**COMPLAINT TO DETERMINE DEBT NON-DISCHARGEABLE UNDER 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6)**<br><br>Assigned to: |

Plaintiff SUSAN O'SHEA ("**O'Shea**" or "**Plaintiff**") for her complaint against defendant BRIAN HANKS ("Hanks" OR "Defendant") alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. This is an adversary proceeding pursuant to 11 U.S.C. § 523 to determine a debt to be non-dischargeability. This adversary is commenced pursuant to Rules 7001(6) of the Federal Rules of Bankruptcy Procedures ("FRBP").

2. This Court has jurisdiction to hear this adversary proceeding as a core proceeding under 28 U.S.C. §§ 157(b)(2)(I), 157(b)(2)(J), 1334(a) and 1334(b).

3. On or about August 14, 2018 ("Petition Date"), BRIAN HANKS (the "Debtor" or "Hanks") filed a voluntary petition for relief under Chapter 7 in the United States Bankruptcy Court for the District of Arizona.

4. The judicial district is the proper venue for this adversary proceeding under 28 U.S.C. § 1409(a), as this adversary proceeding arises under, and is in connection with, the Bankruptcy Case, which currently pending before this Court in this judicial district.

5. Defendant is an unmarried man and a resident of Pima County, Arizona, and the Debtor in the above captioned Chapter 7 Case.

6. All events giving rise to this Complaint occurred in Pima County, Arizona.

7. The Court has jurisdiction over the subject of this Complaint and the parties. Venue is proper.

## GENERAL ALLEGATIONS

8. O'Shea's daughter, Carolyn O'Shea Meyer, has been diagnosed with Complex Regional Pain Disorder and Multiple Sclerosis.

9. O'Shea has undertaken various attempts to raise funds for treatments for her daughter, including a go-fund-me campaign. After the go-fund me campaign, an acquaintance name Jay Renteria informed O'Shea that he would invest money Hanks at Jans

Jobes and associates. Renteria suggested that O'Shea contact Hanks and Jans Jobes as a way to raise money for her daughter.

10. Hanks was informed that O'Shea desperately needed to raise money for her daughter's medical care.

11. On June 1, 2016, O'Shea invested $50,000 with Jans Jobes pursuant to an agreement signed by Hanks, that provided for 25% return, to be paid in two installments of $33,250 to be paid on November 10, 2016 and December 19, 2016.

12. Defendants promptly paid O'Shea in accordance with the June 1, 2016 agreement.

13. On December 1, 2016 Hanks' sent an email addressed to O'Shea in which he made the following representations:

   a. His company was Jans Jobes and Associates, and that his partners are his fiancé Elisa Bonin and his brother Captain Robert Hanks of the North Las Vegas Police department.

   b. That he and his partners were aware of "your daughters condition and the fact that your money means her medical care and future, rest assured not taken lightly."

   c. That his partners, "along with my attorney are aware of each and every investment that we are involved in."

   d. "I have currently over 2.2 Million in dealings and plan to increase that to 8 million over the next 3 years."

   e. During the 15 years I have handled investments for friends and family, not once have any of my investors lost a dime.

   f. "My dealings with FEMI and my private business interest allow me to offer people like yourself opportunities that are rare to invest."

14. The representations in sub paragraphs c, d, e, and f, were false.

15. Hanks knew these representations were false.

16. Hanks made these representations to induce O'Shea to make a second investment with him.

17. In December 2016, Hanks signed an agreement under which O'Shea invested $65,000 (the principal and interest earned on the first investment) with Jans Jobes ("**Investment Agreement**"). The agreement promises 33% interest on the investment, with payments of $43,000 to be made on March 1, 2017 and June 1, 2017.  The Agreement further provided that the payments were "each with options to roll over any/all amounts at the request of Susan O'Shea investor." A true and correct copy of the Agreement is attached to this Complaint as Exhibit A.

18. O'Shea informed Hanks that she did not want to roll over the March 1, 2017 payment by email.

19. Hanks, stated that Jans Jobes could not pay at that time because it was in the middle of an audit.  Hanks stated that when the audit was finished, around the end of April 2017, he would pay every penny promised.

20. The representation that Jans Jobes was being audited was false.

21. Hanks made numerous other  false representations in order to try to convince O'Shea to forbear from enforcing the Investment Agreement

22. Subsequently, Hanks demanded a change in the payment terms of the Investment Agreement under which he would repay the investment in $10,000 monthly installments.

23. On April 20, 2017 Jans Jobes in fact paid a $10,000 installment.

24. Subsequently Jans Jobes paid an additional $5,000 to O'Shea.

25. Hanks and Jans Jobes have failed to make any additional payments on the Investment Agreement.

# Count I

## Non-Dischargeable for Fraud 11 U.S.C. §523(a)(2)

26. O'Shea incorporates each and every paragraph in this Complaint into this Count as if fully set forth herein.

27. On December 1, 2016 Hanks' sent an email addressed to O'Shea in which he made the following representations:

   a. His company was Jans Jobes and Associates, and that his partners are his fiancé Elisa Bonin and his brother Captain Robert Hanks of the North Las Vegas Police department.

   b. That he and his partners were aware of "your daughters condition and the fact that your money means her medical care and future, rest assured not taken lightly."

   c. That his partners, "along with my attorney are aware of each and every investment that we are involved in."

   d. "I have currently over 2.2 Million in dealings and plan to increase that to 8 million over the next 3 years."

   e. During the 15 years I have handled investments for friends and family, not once have any of my investors lost a dime.

   f. "my dealings with FEMI and my private business interest allow me to offer people like yourself opportunities that are rare to invest."

28. The representations in subparagraphs c, d, e, and f were false.

29. Hanks knew they were false.

30. Hanks intended that O'Shea rely on these false representations.

31. O'Shea in fact reasonably relied on Hanks' false representations.

32. O'Shea was damaged in an amount to be established at trial by Hanks fraudulent representations.

33. Consequently, and as a direct and legal result of Hanks' actual fraud, as alleged hereinabove, the resulting damages suffered by Plaintiff in the amount of their claims, should be excepted from discharge pursuant to 11 U.S.C. §523(a)(2)(A).

**SECOND CAUSE OF ACTION**

**(Exception to Discharge for Defalcation While Acting in a Fiduciary Capacity, Embezzlement or Larceny - 11 U.S.C. §523(a)(4)**

34. O'Shea incorporates each and every paragraph in this Complaint into this Count as if fully set forth herein.

35. When O'Shea gave Hanks the $65,000 to invest, it created a de facto trust, where Hanks was trustee, O'Shea a beneficiary, and an identifiable trust res of the $65,000 invested.

36. Hank's was acting as a fiduciary to O'Shea when the debt was created, promising to use his special investment knowledge and skills.

37. The debt created out of the investment is the result of fraud and defalcation.

38. As a direct and legal consequence of the foregoing, the amounts Hanks misappropriated while acting in his fiduciary capacity, and embezzled from Plaintiff should be excepted from discharge pursuant to §523(a)(4).

**THIRD CAUSE OF ACTION**

**(Exception to Discharge for Willful or Malicious Injury - 11 U.S.C. §523(a)(6)**

39. O'Shea incorporates each and every paragraph in this Complaint into this Count as if fully set forth herein.

40. At all times herein mentioned, Hanks willfully and maliciously converted Plaintiff's money and property.

41. Hanks conversion of Plaintiff's property and monies was intentional and deliberate, performed without justification or excuse.

42. Hanks willfully and maliciously injured Plaintiff by converting their property and monies and the amount of the claims of the Plaintiff should be excepted from discharge pursuant to 11 U.S.C. §523(a)(6).

**WHEREFORE**, O'Shea prays pray for judgment against the Defendant as follows:

A. Compensatory and punitive damages for the fraudulent misrepresentations, embezzlement as a fiduciary, and Hank's willful and malicious injuries;

B. A determination that the damages are non-dischargeable under 11 U.S.C. §§523(a)(2),(4), and (6);

C. Attorney's fees, costs, and taxable expenses as permitted by applicable law; and,

D. Such other relief the Court deems fit under the circumstances.

DATED: November 21, 2018.

KASEY C. NYE, LAWYER, PLLC

By /s/ Kasey C. Nye
Kasey C. Nye
Attorneys for Plaintiff SUSAN O'SHEA